Mr. Andrew S. Maurodis Deerfield Beach City Attorney 150 Northeast Second Avenue Deerfield Beach, Florida 33441-3598
Dear Mr. Maurodis:
On behalf of the City of Deerfield Beach you ask substantially the following question:
Does the joint publication of the city's legal notices in a weekly newspaper published and circulated within the City of Deerfield Beach at no charge, but with no second class mailing permit, and in a neighboring city's weekly newspaper with limited circulation within Deerfield Beach, but possessing a second class mailing permit, satisfy the publication requirements of section 50.011, Florida Statutes?
In sum:
Joint publication of a city's legal notices in two newspapers that do not independently meet the publication requirements of section50.011, Florida Statutes, does not constitute proper notice under the statute.
You state that the Pompano Ledger and the Deerfield Beach Observer have proposed a joint endeavor in which both would publish legal advertisements relating to ordinances to be considered by the City of Deerfield Beach in order to satisfy the publication requirements of section 166.041(3), Florida Statutes.[1]
The Pompano Ledger is a weekly newspaper published within the City of Pompano Beach with a paid circulation and a second class mailing permit. It covers news within Pompano Beach, but has limited subscribers and newsstand distribution within Deerfield Beach. The Deerfield Beach Observer is a weekly newspaper covering news relating to Deerfield Beach. It is distributed at no charge with home and newsstand delivery, but does not have a second-class mailing permit.
Section 166.041(3), Florida Statutes, requires generally that, at least ten days prior to adoption, a proposed ordinance be noticed in a "newspaper of general circulation in the municipality." While the term "newspaper of general circulation in the municipality" is not defined for purposes of the statute, section50.011, Florida Statutes, provides that any statutorily prescribed legal notice, advertisement or publication be published
in a newspaper printed and published periodically once a week or oftener, containing at least 25 percent of its words in the English language, entered or qualified to be admitted and entered as second-class matter at a post office in the county where published, for sale to the public generally, available to the public generally for the publication of official or other notices and customarily containing information of a public character or of interest or of value to the residents or owners of property in the county where published, or of interest or of value to the general public.
Further, section 50.031, Florida Statutes, requires, in part, that such newspapers
shall have been in existence for 1 year and shall have been entered as second-class mail matter at a post office in the county where published, or in a newspaper which is a direct successor of a newspaper which together have been so published.
Thus, in sections 50.011 and 50.031, Florida Statutes, the Legislature has prescribed detailed minimum requirements a newspaper must meet before it qualifies for publication of legal notices. Strict compliance with these minimum requirements forecloses the prospect of a successful due process challenge to the notice provided.[2]
Applying these requirements to the Deerfield Beach Observer, it would appear that the paper would not qualify as a newspaper for publication of legal notices under section 50.011, Florida Statutes, since it does not have a second-class mailing permit[3]
and it is not distributed by paid circulation.[4]
The Supreme Court of Florida, in Culclasure v. Consolidated Bond 
Mortgage Company,[5] interpreted the term "newspaper" for purposes of notice requirements to mean
some publication appearing at daily or weekly intervals reporting the news or happenings of local or foreign interest, or both, such as social, religious, political, moral, business, professional, editorial, and other kindred subjects intended for the information of the general reading public.
In some instances, however, the Legislature has imposed publication requirements in addition to those prescribed in Chapter 50, Florida Statutes. As recognized by this office, these additional requirements satisfy the need for greater due process protections for citizens when local governments undertake particular actions.[6]
In Attorney General Opinion 81-32, this office concluded that the procedures contained in section 166.041, Florida Statutes, are the minimum requirements necessary for the adoption of a municipal ordinance. Thus, the requirement in section 166.041, Florida Statutes, that the newspaper in which a legal notice is published is in general circulation in the municipality, is mandatory.
Section 166.041(3)(c)2.b., Florida Statutes, requires that notices of zoning changes affecting land area of ten acres or more be "placed in a newspaper of general paid circulation in the municipality and of general interest and readership in the municipality, not one of limited subject matter, pursuant to chapter 50." While this requirement is not generally applicable to all legal notices that must be published in a newspaper, it appears instructive and satisfies the Legislature's intent to provide due process to the citizens of a municipality who may be affected by the governmental action.
While the Pompano Ledger has a paid circulation and a secondclass mailing permit, its limited circulation within Deerfield Beach and its focus on news relevant to Pompano Beach would appear to disqualify it as a publication with general circulation in or of interest to the citizens of Deerfield Beach. Thus, the Pompano Ledger fails to meet the publication requirements of sections50.011 and 166.041, Florida Statutes, for legal notices of proposed ordinances for the City of Deerfield Beach.
Neither section 50.011, Florida Statutes, nor section 166.041, Florida Statutes, recognizes joint publication of legal notices such that the deficiencies of one newspaper are compensated for by another newspaper. While joint publication in the two papers may adequately notify the citizens of Deerfield Beach, the Legislature has not provided a manner in which such an alliance may be accomplished to satisfy the requirements of sections 50.011 and166.041, Florida Statutes.
Accordingly, it is my opinion that section 50.011, Florida Statutes, does not authorize the joint publication of a city's legal notices in two weekly newspapers that individually do not meet the requirements for publication of legal notices.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 166.041(3)(a), Florida Statutes, provides:
Except as provided in paragraph (c), a proposed ordinance may be read by title, or in full, on at least 2 separate days and shall, at least 10 days prior to adoption, be noticed once in a newspaper of general circulation in the municipality. The notice of proposed enactment shall state the date, time, and place of the meeting; the title or titles of proposed ordinances; and the place or places within the municipality where such proposed ordinances may be inspected by the public. The notice shall also advise that interested parties may appear at the meeting and be heard with respect to the proposed ordinance. (e.s.)
[2] See, Op. Att'y Gen. Fla. 73-149 (1973) (publication in newspaper not meeting the requirements of s. 50.011, Fla. Stat., does not meet the requirements of due process of law).
[3] See, Op. Att'y Gen. Fla. 94-24 (1994) (newspaper within scope of s. 50.011, Fla. Stat., must have been circulated as second-class mail material for at least one year).
[4] See, Inf. Op. to Mr. Dave Whitney, Editor of the Islamorada Free Press, April 22, 1992 (newspapers must be sold in order to satisfy statutory requirements of s. 50.011, Fla. Stat.). The informal opinion noted that during the 1992 Legislative Session, a bill (HB 0451, Florida Legislature, Regular Session, 1992) was introduced to remove the requirement in s. 50.011, Fla. Stat., that newspapers be sold in order to qualify for the publication of legal notices, but died in committee.
[5] 114 So. 540 (Fla. 1927).
[6] See, Op. Att'y Gen. Fla. 90-67 (1990).